

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RAHEEM S. AL-AZIM**, *et al.*,

    Plaintiffs,

v.                                                          Civil Action No. **3:14CV339**

**J. EVERETT**, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Raheem S. Al-Azim, Charles X, and Victor X ("Plaintiffs"), Virginia inmates proceeding *pro se*, have submitted this civil action. The matter is proceeding on the Plaintiffs' Amended Complaint (ECF No. 36). Plaintiffs have named as defendants the following individuals: A.D. Robinson, Chief of Operations for the Virginia Department of Corrections ("VDOC"); V.M. Washington, a former Regional Administrator for the VDOC; Wendy S. Hobbs, a Regional Administrator for the VDOC; Linda Shear, a former Chief Dietician for the VDOC; R. Abernathy, a former Food Service Manager for the VDOC; Timothy Puryear, a former Programs Manager for the Greensville Correctional Center ("GCC"); and Harold Clarke, Director of the VDOC.[1] The matter is before the Court on Plaintiffs' failure to serve Puryear and Abernathy and the Motion for Partial Summary Judgment (ECF No. 13) filed by the remaining Defendants.

---

[1] By Memorandum Order entered May 18, 2015, the Court granted Plaintiffs' Motion to Amend and directed that the Amended Complaint supplant the Original Complaint. Defendants Younce, Everett, Wright, Ray, Rodriquez, Lewis, and Cei, who were named in the Original Complaint, but not in the Amended Complaint, have filed Motions to Dismiss the claims against them. (ECF Nos. 23, 38.) As the Court already has dismissed all claims against Lewis, Younce, Wright, Ray, Rodriquez, Lewis, and Cei, the Motions to Dismiss (ECF Nos. 23, 38) will be DENIED AS MOOT.

## I. FAILURE TO SERVE PURYEAR AND ABERNATHY

Whereas the original Complaint named fifteen individuals as defendants, the Amended Complaint names only seven defendants. R. Abernathy and Linda Shear are named in both the Original Complaint and the Amended Complaint. By Memorandum Order entered on August 12, 2014, the Court informed Plaintiffs that they had 120 days from the entry thereof to serve the defendants. *See* Fed. R. Civ. P. 4(m).[2]

Although it ultimately remained Plaintiffs' responsibility to serve the defendants, the Court attempted to serve the defendants pursuant to an informal service agreement with the Attorney General's Office for the Commonwealth of Virginia. By letter dated September 15, 2014, the Attorney General's Office informed the Court and Plaintiffs that it could not accept service for Shear and Abernathy because they were no longer employed by the VDOC. (ECF No. 6, at 1.) Thereafter, Victor X sought to compel the Attorney General's Office to provide the addresses for the unserved defendants. (ECF No. 10.)

By Memorandum Order entered on December 18, 2014, the Court granted the Motion to Compel in part. Specifically, the Court directed the Attorney General's Office to provide the addresses for Shear and Abernathy to the Court *ex parte* and under seal. The Court further noted that "Plaintiffs are not proceeding *in forma pauperis*. Therefore, they are not automatically entitled to have the Marshal serve process without the prepayment of service fees. Plaintiffs'

---

[2] Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

2

eventual arrangement to serve the unserved defendants must address the VDOC's security concerns." (ECF No. 18, at 2–3.) On December 30, 2014, the Attorney General's Office provided the Court with the address for Shear and notified Plaintiffs of this fact. (ECF No. 21, at 1–2.) The Attorney General's Office further informed the Court and Plaintiffs that it did not possess a last known address for Abernathy. (*Id.* at 1.) Thereafter, Plaintiffs made no further efforts to serve Abernathy or Shear. Accordingly, by Memorandum Order entered on May 18, 2015, the Court directed Plaintiffs to show good cause why all claims against Shear and Abernathy should not be dismissed for their failure to affect timely service.

In response, Plaintiffs initially suggest that they assumed that the Court would take care of any necessary arrangements to serve Abernathy and Shear.[3] The Court's prior Memorandum Orders clearly informed Plaintiffs that they bore the ultimate responsibility to ensure that the defendants were served. The December 18, 2014 Memorandum Order reminded Plaintiffs that they were not proceeding *in forma pauperis* and would have to make some arrangement to serve the unserved defendants. Plaintiffs did nothing. *See Huff v. McCormick*, No. 3:14cv349, 2015 WL 1349826, at *1 (E.D. Va. Mar. 24, 2015) (internal quotation marks omitted) (citations omitted) (observing that "neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service generally are insufficient to show good cause"). As Plaintiffs have failed to demonstrate good cause, all claims against Defendants Abernathy and Shear will be DISMISSED WITHOUT PREJUDICE.

---

[3] Plaintiffs also suggest that the Attorney General's Office falsely stated that Shear no longer works at the VDOC. In support of this assertion, Plaintiffs direct the Court to "VIRGINIA DEPARTMENT OF CORRECTIONS MASTER MENU: AUGUST 2014 – JUNE 2015." (ECF No. 41–1.) Plaintiffs insist that since the menu bears Shear's name at the bottom of the menu, she must still work for the VDOC. The Court disagrees. Shear could easily have prepared the menu in August of 2014. Moreover, the out-of-state address the Attorney General's Office provided for Shear is consistent with its representation that she is no longer employed by the VDOC.

## II. PLAINTIFFS' CLAIMS FOR RELIEF

Plaintiffs seek relief upon the following grounds:

Claim 1     (a) "Defendants Clarke, Shear, Hobbs, Abernathy, and Washington violated Plaintiffs' First Amendment[4] right to practice their religion by refusing to provide them a diet reasonably consistent with *How to Eat to Live*, Volumes 1 and 2, by the Most Honorable Elijah Muhammad." (Am. Compl. 1.)[5]
(b) Defendants Clarke, Shear, Hobbs, Abernathy, and Washington violated Plaintiffs' rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[6] by failing to provide a diet consistent with *How to Eat to Live*. (*Id.* at 10.)

Claim 2     "Defendants Clarke and Shear violated Plaintiffs' rights under the Fourteenth Amendment[7] by refusing to provide them a diet reasonably consistent with *How To Eat To Live*, while affording one to members of the Nation of Islam confined at Buckingham Correctional Center, thereby intentionally discriminating against Plaintiffs on the basis of their religion." (*Id.* at 5.)

Claim 3     (a) "Defendant[s] Washington, Puryear, and Hobbs violated Plaintiffs' right to practice their religion by refusing them sufficient time for worship services." (*Id.* at 6.)
(b) Defendants Washington, Puryear, and Hobbs violated Plaintiffs' rights under RLUIPA by refusing: (i) "to afford Plaintiffs time to have [Fruit of Islam] F.O.I. training classes for two (2) hours weekly"; (ii) "refusing to afford Plaintiffs time to have Juma'ah (Friday) prayer service for one (1) hour"; and (iii) "refusing to afford Plaintiffs time to have Self-Improvement: The Basis for Community Development classes for two (2) hours weekly." (*Id.* at 10).

Claim 4     "Defendants Washington, Robinson, Clarke, and Hobbs violated Plaintiffs['] right to practice their religion by refusing to authorize them to purchase and receive compact discs of weekly sermons by the Honorable Louis Farrakhan." (*Id.* at 7.)

---

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I.

[5] The Court omits all unnecessary underlining in the quotations to the Amended Complaint.

[6] Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§ 2000cc *et seq*.

[7] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Claim 5      "Defendants Hobbs, Washington, Puryear, Ray, and Younce denied Plaintiffs an opportunity to observe their Eid ul Fitr prayer service on August 30, 2011, in violation of [the] First Amendment." (*Id.* at 8.)

## III. SUMMARY JUDGMENT

Defendants have moved for Partial Summary Judgment on the grounds that Plaintiffs failed to exhaust their administrative remedies with respect to some of the above claims. For the reasons set forth below, the Motion for Partial Summary Judgment will be GRANTED.[8]

### A.   Plaintiffs' Response to the Motion for Partial Summary Judgment

Prior to addressing the Motion for Summary Judgment, it is necessary to address Plaintiffs' inappropriate response to that motion. By Memorandum Order entered on December 18, 2014, the Court informed Plaintiffs:

> "In the case of multiple *pro se* plaintiffs, each plaintiff must sign each pleading, written motion and other paper." *Day v. Wall*, No. CA 08-094 ML, 2008 WL 4773054, at *1 (D.R.I. Oct. 30, 2008) (citing *Casanova v. Dubois*, 289 F.3d 142 (1st Cir. 2002)). Although the Court has overlooked the omission in this instance, in the future, any requests or submissions that fail to comply with this requirement will not be considered.

(ECF No. 18, at 3.) Despite this explicit warning, Plaintiffs' Response to the Motion for Partial Summary Judgment bears only the signature of Victor X. Jonathan Lee X Smith, a well-known recreational litigator, purported to sign the Response on behalf of Al-Azim and Charles X. As such, the Court will only consider the Response to the Motion for Partial Summary Judgment as it pertains to Victor X.[9]

---

[8] Plaintiffs' Original Complaint failed to specifically raise the grounds for relief delineated in Claim 3(b) in the Amended Complaint. Therefore, Defendants' Motion for Partial Summary Judgment fails to acknowledge or address Claim 3(b) or its subparts.

[9] The Court's reluctance to consider the documents Mr. Smith submitted on behalf of Charles X and Al-Azim is heightened by the fact that Mr. Smith penned much of the grievance material and then apparently forged the signatures of Charles X or Al-Azim on some of the grievance material. (*See, e.g.*, ECF No. 22–3, at 5.)

5

### B. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citation omitted). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed." *Id.* (internal quotation marks omitted) (citation omitted). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary

6

judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants ask the Court to dismiss Plaintiffs' claims against them because Plaintiffs failed to exhaust their administrative remedies as required by 42 U.S.C. § 1997e(a). As the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their defense of lack of exhaustion, Defendants submitted an affidavit from S. Tapp, the Grievance Coordinator at GCC (Mem. Supp. Mot. Summ. J. Ex. 1 ("Tapp Affidavit"), ECF No. 14-1)); a copy of VDOC Operating Procedure § 866.1 (Tapp Aff. Encl. A ("Operating Procedure § 866.1")),[10] and copies of grievance material submitted by Al-Azim, Charles X, and Victor X.[11]

Victor X responded by submitting his own sworn declaration (Resp. Mot. Summ. J. Ex. 1 ("Victor X Decl.")) and copies of his grievance material. (ECF No. 22-1.) In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motions for Summary Judgment.[12]

---

[10] The Court has omitted the emphasis in the quotations from this document.

[11] The Court employs the pagination assigned by the Court's CM/ECF docketing system for any citation to Plaintiffs' grievance material.

[12] As previously discussed, Al-Azim and Charles X did not respond to the Motion for Partial Summary Judgment. Instead, Jonathan Lee X Smith inappropriately submitted a sworn declaration and some grievance material on their behalf. (ECF Nos. 22-2, 22-3.)

### C. Summary of Pertinent Facts

#### 1. VDOC Grievance Procedure

Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach a copy of the Informal Complaint to the Regular Grievance. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A Regular Grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is

8

received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.4.)

Up to three levels of review for a Regular Grievance exist. (Operating Procedure § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### 2. Al-Azim's Grievances

#### a. Claim 1

Defendants concede that Al-Azim has exhausted his administrative remedies for Claims 1(a) & (b). (Reply 4.)

#### b. Claim 2

Al-Azim failed to submit any grievance regarding his claim that "he has been discriminated against because other inmates receive a diet consistent with their religious beliefs." (Tapp Decl. ¶ 19.)

#### c. Claim 3(a)

Al-Azim did not file any grievance regarding his allegation that he has not been allowed sufficient worship time. (*Id.*)

#### d. Claim 4

Al-Azim filed a grievance complaining that he could not purchase CD's of sermons by Minister Farrakhan. (ECF No. 14–1, at 40.) On August 21, 2012, prison officials issued the Level 1 response and found Al-Azim's grievance unfounded. (ECF No. 14–1, at 42–43.) Al-Azim failed to file pursue a further appeal to Level II.[13]

#### e. Claim 5

Al-Azim failed to file any timely grievance regarding the denial of Eid ul Fitr prayer service on August 30, 2011. (Tapp Aff. ¶ 19.)[14]

### 3. Charles X's Grievances

#### a. Claim 1

Charles X filed a regular grievance complaining that the VDOC failed to provide him with a diet consistent with his religious dietary beliefs. (ECF No. 14–2, at 4.) On February 1, 2012, prison officials determined this grievance was unfounded. (*Id.*) Charles X failed to file a timely appeal of the denial of this grievance.[15] (Tapp Aff. ¶ 22.)

---

[13] In his affidavit, Mr. Smith asserts that he pursued an appeal on behalf of Al-Azim, but that the appeal was inappropriately rejected as untimely. (ECF No. 22–2, at 5; *id.* at 13.) The Court notes that regardless of the timeliness of the appeal, the appeal failed to comport with the appropriate prison rules in that it was drafted by Mr. Smith and failed to contain a signature by Al-Azim. (ECF No. 22–2, at 12.)

[14] On October 9, 2011, Al-Azim filed an untimely grievance regarding the denial of the prayer service on August 30, 2011. (ECF No. 22–2, at 15.)

[15] The record indicates that prison officials denied an appeal of this grievance as untimely. (ECF No. 22–3, at 11–13.)

10

### b. Claim 2

Charles X failed to file any grievance regarding his complaint that he has been discriminated against because other inmates receive a diet consistent with their religious beliefs. (Tapp Aff. ¶ 27.)

### c. Claims 3(a) and 4

Defendants concede Charles X exhausted his administrative remedies with respect to his assertion that he has been denied sufficient time for worship services and denied the right to purchase CDs of sermons by Minister Farrakhan. (Reply 4.)

### d. Claim 5

Charles X failed to file any grievance regarding his complaint that he has been denied the ability to participate in the Eid ul Fitr prayer service on August 30, 2011. (Tapp Aff. ¶ 27.)

### 4. Victor X's Grievances

#### a. Claims 1, 2, and 4

Defendants concede that Victor X has exhausted his administrative remedies for his claims about receiving a diet consistent with his religious precepts, his claim that Defendants discriminated against him by failing to provide him a diet consistent with his religious precepts and his claim that the Defendants denied him the ability to purchase CDs of sermons by Minister Farrakhan. (Reply 4.)

#### b. Claim 3(a)

On January 13, 2012, Victor X submitted a regular grievance complaining the he failed to receive sufficient time for his religious services. (ECF No. 14–2, at 28–29.) On February 6, 2012, prison officials responded to this grievance and determined that it was unfounded. (ECF

No. 14–2, at 30–31.) On February 7, 2012, prison officials mailed a copy of that response to Victor X. (ECF No. 22–1, at 10.) Victor X received that response and appealed the decision to Level II. (ECF No. 22–1, at 8–9.) Nevertheless, the Regional Ombudsman failed to receive the appeal until February 27, 2012, so the appeal was deemed to have "exceeded the five (5)-calendar day time limit" to appeal. (ECF No. 22–1, at 10.)

### c. Claim 5

On October 15, 2011, Victor X filed a regular grievance complaining that he was not allowed to participate in the Eid ul Fitr prayer on August 30, 2011. (ECF No. 22–1, at 15.) On October 18, 2011, the Grievance Coordinator rejected the grievance on intake because it had not been filed "within 30 calendar days from the date of occurrence/incident, or discovery of the occurrence or incident." (ECF No. 22–1, at 16.)[16] Victor X appealed that intake decision. The Regional Ombudsman returned that appeal to Victor X because it was determined that "the 5 day time limit for review has been exceeded." (ECF No. 22–1, at 16.)

### D. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to

---

[16] Victor X makes a nonsensical and unconvincing argument that he did not discover that he had been denied his prayer on August 30, 2011 until September 17, 2011, when he "learned through prisoner Johnathan Lee X . . . that an official memorandum was issued, stating that [he] had been authorized to participate in [his] annual Eid-ul-Fitr prayer service with the Nation of Islam on August 30, 2011." (ECF No. 22–1, at 3.)

satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).[17]

### 1. Claims 1(a) and 1(b)

Although Charles X filed a grievance regarding the denial of a diet consistent with his religious beliefs, he failed to file a timely, proper appeal of that grievance. Therefore, he failed to comply with the exhaustion requirement for Claims 1(a) and 1(b). *See Woodford*, 548 U.S. at 90. Accordingly, Charles X will be DISMISSED as a plaintiff from Claims 1(a) and 1(b).

### 2. Claim 2

Neither Al-Azim nor Charles X submitted a grievance regarding the claim that they have been discriminated against because other inmates receive a diet consistent with their religious beliefs. Accordingly, as they failed to comply with the exhaustion requirement, Al-Azim and Charles X will be DISMISSED as plaintiffs with respect to Claim 2.

---

[17] "[P]laintiffs who are not members of a certified class may not rely on vicarious exhaustion." *Shabazz v. Va. Dep't of Corr.* No. 3:10CV638, 2011 WL 4025264, at *4 (E.D. Va. Sept. 9, 2011) (citing *McGoldrick v. Werholtz*, 185 F. App'x 741, 74344 (10th Cir. 2006); *Heng v. Donald*, No. 7:08-CV-5 (HL), 2011 WL 925726, at *5 (M.D. Ga. Jan. 25, 2011)). Plaintiffs may not "piggyback" the exhaustion efforts of other inmates. *Id.*

3. **Claim 3(a)**

Al-Azim did not file any grievance regarding his allegation that he has not been allowed sufficient worship time. Accordingly, Al-Azim will be DISMISSED as a plaintiff with respect to Claim 3(a).

Although Victor X filed a grievance with respect to Claim 3(a), his appeal from the denial of that grievance was rejected as untimely. Therefore, he failed to comply with the exhaustion requirement for Claim 3(a). *See Woodford*, 548 U.S. at 90. Accordingly, Victor X will be DISMISSED as a plaintiff with respect to Claim 3(a).

4. **Claim 4**

Although Al-Azim filed a grievance regarding his inability to purchase CDs of sermons by Minister Farrakhan, he fails to demonstrate that he filed a proper appeal with respect to this issue. Accordingly, Al-Azim will be DISMISSED as a plaintiff with respect to Claim 4.

5. **Claim 5**

Charles X failed to file any grievance regarding his complaint that he has been denied the ability to participate in the Eid ul Fitr prayer service on August 30, 2011. (Tapp Aff. ¶ 27.) Although Victor X and Al-Azim filed grievances regarding the denial of the ability to participate in the Eid ul Fitr prayer service on August 30, 2011, their grievances were filed outside of the thirty-day time limit and hence were rejected as untimely. Such untimely grievances fail to satisfy Victor X's and Al-Azim's responsibility to properly exhaust their administrative remedies. *See Knight v. Sheppherd*, No. 7:14CV00687, 2015 WL 2452914, at *2 n.2 (W.D. Va. May 22, 2015) (citing *Woodford*, 548 U.S. at 94). Accordingly, Claim 5 will be DISMISSED

because Plaintiffs failed to properly exhaust their administrative remedies with respect to that claim.

## IV. CONCLUSION

All claims against Abernathy and Shear will be DISMISSED WITHOUT PREJUDICE. Defendants' Motion for Partial Summary Judgment (ECF No. 13) will be GRANTED. The remaining claims are as follows:

Claim 1      (a ) "Defendants Clarke . . ., Hobbs, . . . and Washington violated [Victor X's and Al-Azim's] First Amendment right to practice their religion by refusing to provide them a diet reasonably consistent with *How to Eat to Live*, Volumes 1 and 2, by the Most Honorable Elijah Muhammad." (Am. Compl. 1.)
(b) Defendants Clarke, Hobbs, and Washington violated Victor X's and Al-Azim's rights under RLUIPA by failing to provide a diet consistent with *How to Eat to Live*. (*Id.* at 10.)

Claim 2      "Defendant[ ] Clarke . . . violated [Victor X's] rights under the Fourteenth Amendment by refusing to provide [him] a diet reasonably consistent with *How To Eat To Live*, while affording one to members of the Nation of Islam confined at Buckingham Correctional Center, thereby intentionally discriminating against [Victor X] on the basis of [his] religion." (*Id.* at 5.)

Claim 3      (a) "Defendant[s] Washington, Puryear, and Hobbs violated [Charles X's] right to practice [his] religion by refusing [him] sufficient time for worship services." (*Id.* at 6.)
(b) Defendants Washington, Puryear, and Hobbs violated Plaintiffs' rights under RLUIPA by refusing: (i) "to afford Plaintiffs time to have [Fruit of Islam] F.O.I. training classes for two (2) hours weekly"; (ii) "refusing to afford Plaintiffs time to have Juma'ah (Friday) prayer service for one (1) hour"; and (iii) "refusing to afford Plaintiffs time to have Self-Improvement: The Basis for Community Development classes for two (2) hours weekly." (*Id.* at 10).

Claim 4      "Defendants Washington, Robinson, Clarke, and Hobbs violated [Charles X's and Victor X's] right to practice their religion by refusing to authorize them to purchase and receive compact discs of weekly sermons by the Honorable Louis Farrakhan." (*Id.* at 7.)

As the Court already has dismissed all claims against Lewis, Younce, Wright, Ray, Rodriquez, Lewis, and Cei, the Motions to Dismiss (ECF Nos. 23, 38) will be DENIED AS

15

MOOT. Any party wishing to file a Motion for Summary Judgment must do so within seventy (70) days of the date of entry hereof.

An appropriate Order shall issue.

Date: 8-3-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

16